UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
CASE NO.: 21-cv-23861

10 MINUTE FITNESS INC. d/b/a
ZAAZ, and T-ZONE HEALTH, INC.

    Plaintiffs,
v.

AMENTUM SERVICES, INC.,
f/k/a URS FEDERAL SERVICES, INC.

    Defendant.
_____/

## COMPLAINT

**COMES NOW**, Plaintiffs, 10 MINUTE FITNESS INC. d/b/a ZAAZ, and T-ZONE HEALTH, INC., by and through its attorneys, Spector Rubin, P.A., and files its Complaint against the Defendant, AMENTUM SERVICES, INC., f/k/a URS FEDERAL SERVICES, INC., and states as follows:

### JURISDICTION AND VENUE

1. At all material times, Plaintiff, 10 MINUTE FITNESS INC. d/b/a ZAAZ (hereinafter "ZAAZ") was and is a Texas corporation with its principal place of business in California.

2. At all material times, Plaintiff, T-ZONE HEALTH, INC. (hereinafter "TZONE") was and is a Canadian corporation with its principal place of business in Ontario, Canada.

3. Upon information and belief, Defendant AMENTUM SERVICES, INC., f/k/a URS FEDERAL SERVICES, INC. (hereinafter "URS") was and is a Delaware corporation with its principal place of business in Maryland.

4. This Court has jurisdiction based upon 28 U.S.C § 1332, as it is an action between citizens of different states and/or between citizens of a State and citizens of a foreign State and the amount in controversy exceeds $75,000.00 exclusive of interest and costs.

5. This Court has personal jurisdiction over URS, since URS engages in systematic and continuous business in this State, maintains a registered agent and offices in this State, committed tortious acts within this State.

6. Venue is appropriate in this district as the acts or omissions complained of took place in this district.

7. All conditions precedent have been met or waived.

**STATEMENT OF FACTS**

8. Plaintiff ZAAZ is the industry leader in Whole Body Vibration technology ("WBV").

9. ZAAZ machines are FDA listed as Class I Medical Device and Powered Exercisers.

10. ZAAZ primarily markets the machines by conducting limited-engagement events in the stores of major national retailers, such as Costco and Sam's Club.

11. ZAAZ sends its sales representative into the stores of its retail partners to demonstrate ZAAZ technology to their customers.

12. ZAAZ sells through their registers and its own ecommerce website.

13. ZAAZ does not distribute or sell wholesale to other resellers or sell on third-party websites.

14. ZAAZ features only one model of machine, the ZAAZ 20K WBV machine, which it has been selling since 2011.

15. Between April 2017 and June 2017 US Customs and Border Protection ("CBP") seized 3 containers (2 from Savannah, 1 from Miami), each containing 225 ZAAZ 20K machines, claiming counterfeit trademark due to an alleged improper depiction of a UL certification number stamped on the base of each machine.

16. These cases are referenced as 2017-1703-000157-01; 2017-1703-000158-01; and 2017-1703-000236-01.

17. The machines were purchased by TZONE.

18. The UL number was an accurate registration number of the safety certification of the plastic of the base case, but since ZAAZ machines themselves are CSA-certified instead of UL-certified, CBP claimed that the presence of the stamped UL # was misleading and inappropriate.

19. ZAAZ tried in vain to get CBP to agree to allow ZAAZ to correct the mistake (which had occurred at the factory level without ZAAZ's knowledge) by simply removing the stamp with solvent, painting over it, or even swapping all the base cases altogether.

20. However, CBP insisted that a "zero tolerance policy" would be enforced and that the 3 containers would all be forfeited.

21. Specifically, CBP advised ZAAZ that all of the machines in all 3 containers would be destroyed.

22. ZAAZ thereafter engaged in multiple discussions with CBP regarding the destruction.

23. On October 1, 2018, ZAAZ spoke with CBP, who advised that all of the machines had been destroyed.

24. ZAAZ sent a follow-up email requesting copies of the Destruction Orders and Confirmation of Destruction.

25. CBP responded, stating, "Unfortunately, I cannot release the requested information. I can tell you that the below cases both have destruction certificates in the case file."

26. However, Plaintiffs learned that, despite the multiple assurances from CBP that the machines had been destroyed, the "destroyed" machines were, in fact, being sold on EBAY and Amazon.

27. Curious as to how this could possibly have happened, ZAAZ attempted, several times, to contact CBP to inquire as to how the destroyed machines could have found their way onto ecommerce websites.

28. With respect to the third container, according to CBP, as of September 2018, CBP still had the third container in its possession.

29. All three containers were sent to Miami, Florida.

30. CBP confirmed that they had the Order of Destruction, Witness Report, and Confirmation of Destruction of the other two containers, though they refused to share the documents.

31. Upon information and belief, CBP designated to URS the responsibility to destroy the machines.

32. Specifically, URS was to destroy the machines in Miami, Florida.

33. Upon information and belief, URS provided CBP with the destruction certificates evidencing their destruction in Miami, Florida.

34. However, the machines were not destroyed since same were sold, and continue to be sold by third parties.

35. Each container contained 225 machines with a cost value of $91,181.25 each, and $273,543.75 in total.

36. Every one of the machines had been presold to ZAAZ customers at a price of $2,299.99, making the loss value $1,552,493.25.

37. However, the damage to ZAAZ caused by the acts or omissions of URS is much greater than the value of the subject machines.

38. The loss of the machines created major disruption to the ZAAZ supply chain and order fulfillment process and schedule. As a result, cash flow was severely impacted and ZAAZ was forced to take several emergency high-interest loans to compensate.

39. Further, the delivery timeframe communicated to customers at the time of purchase had to be extended, which impeded sales results.

40. The whole situation jeopardized the company as a whole.

41. Nevertheless, ZAAZ attempted to recoup its losses and recover its business.

42. However, ZAAZ discovered that its sales suffered – because it was competing against its own products which were now on the market.

43. That is, the machines, which CBP determined could <u>not</u> be sold in the United States and which URS attested under path to CBP had been destroyed, were now being offered on eBay and Amazon (and likely through other ecommerce sites and third-party retailers) at greatly reduced prices.

44. Again, ZAAZ does not sell to any resellers, only directly to consumers.

45. As such, there is simply no way that the machines could have gotten into the hands of these third parties.

46. Further, ZAAZ purchased one machine from eBay and one machine from Amazon and confirmed from the serial numbers and the presence of the offending UL stamps that the machines were indeed from the seized containers that were supposedly destroyed.

47. Obviously, the fact that the authentic ZAAZ 20K machines were now being offered through unauthorized, online resellers at 50%-60% below the ZAAZ MSRP had an enormous impact on ZAAZ's business.

48. Hundreds of sales were lost to customers.

49. These customers were introduced to ZAAZ through its marketing efforts in Costco or Sam's Club.

50. Due to the actions of URS, these customers then bought discounted machines online instead of from ZAAZ.

51. Hundreds more sales were lost to customers who had bought from ZAAZ and elected to return their machine in order to repurchase online at cheaper prices.

52. ZAAZ has always maintained its premium price and has long since established the ZAAZ 20K as the premiere WBV machine on the market.

53. The machines, which were supposed to have been destroyed, were now being offered online at discounted prices.

54. This caused tremendous damage to the reputation of the ZAAZ brand and the perception of its value.

55. ZAAZ lost customers and good will.

56. ZAAZ further experienced a wave of attrition as several very valuable sales representatives ceased working for ZAAZ as a result.

57. ZAAZ was also threatened with the loss of its contract with Costco, its most valuable retail partner, due to the strict rule that products cannot be marketed anywhere else at prices below what they are being sold for in Costco.

58. Several times Costco threatened to cancel its contract with ZAAZ unless the situation could be resolved. ZAAZ spent considerable effort mending this relationship.

59. ZAAZ contacted the online retailers to alert them to the fact that the machines being sold on their sites by unauthorized third parties.

60. Despite these warnings, the sellers persisted in the online offerings.

61. The situation caused major losses of revenue and caused further cash flow shortfalls that ZAAZ had to make up for by taking crippling high-interest loans.

62. As a result of the actions of URS, ZAAZ was prevented from advancing on the completion and introduction of its next-generation WBV machine and the forward progress of the company.

63. It will take years to repair the ZAAZ reputation and financial stability.

64. TZONE, was purchaser of the products, lost the value of same as a result of the actions of CBP.

## COUNT I – NEGLIGENCE (ZAAZ CLAIM)

65. Plaintiffs repeat and re-allege the allegations contained in paragraphs 1 through 64 and further states:

66. Defendant owed a duty to Plaintiffs to destroy or otherwise dispose of the subject shipments in a timely and proper manner.

67. Defendant further owed a duty to Plaintiffs and CBP to accurately advise as to the status of the destruction or other disposition of the subject shipments.

68. Defendant was negligent with respect to the disposition and destruction of the subject shipments after their seizure.

69. Defendant also failed to act reasonable and prudent under the circumstances with respect to the disposition and destruction of the subject shipments after their seizure.

70. Defendant breached its duties to Plaintiff as set forth above.

71. As a result of Defendant's conduct, Plaintiff was damaged.

**WHEREFORE,** for the all of the reasons stated herein, Plaintiffs demand judgment in its favor and over and against Defendant in the amount of $12,326,036.50, together with prejudgment interest, costs, fees, and other and further relief as this Court deems just and proper.

### COUNT II –NEGLIGENCE (TZONE CLAIM)

72. Plaintiffs repeat and re-allege the allegations contained in paragraphs 1 through 64 and further states:

73. Defendant owed a duty to Plaintiffs to destroy or otherwise dispose of the subject shipments in a timely and proper manner.

74. Defendant further owed a duty to Plaintiffs and CBP to accurately advise as to the status of the destruction or other disposition of the subject shipments.

75. Defendant was negligent with respect to the disposition and destruction of the subject shipments after their seizure.

76. Defendant also failed to act reasonable and prudent under the circumstances with respect to the disposition and destruction of the subject shipments after their seizure.

77. Defendant breached its duties to Plaintiffs as set forth above.

78. As a result of Defendant's conduct, Plaintiffs were damaged.

**WHEREFORE,** for the all the reasons stated herein, Plaintiffs demand judgment in its favor and over and against Defendant in the amount of $308,891.71, together with prejudgment interest, costs, fees, and other and further relief as this Court deems just and proper.

### COUNT III – UNFAIR AND DECEPTIVE TRADE PRACTICE
### FLA. STAT § 501.202 et seq

79. Plaintiffs repeat and re-allege the allegations contained in paragraphs 1 through 64 and further states:

80. Plaintiffs are consumers as that term is defined by Florida law.

81. URS's actions as set forth herein constitute deceptive and/or unfair trade practices, as set forth in Fla. Stat. § 501.203 and § 501.204.

82. Specifically, and without limitation, URS issued or caused to be issued Destruction Certificates for the machines when they knew that the machines had not been destroyed.

83. As a direct and proximate result of URS's actions, Plaintiffs have suffered actual damages.

**WHEREFORE,** for all of the reasons stated herein, Plaintiffs demand judgment in its favor and over and against Defendant, together with prejudgment interest, costs, fees, and other and further relief as this Court deems just and proper.

## JURY DEMAND

Plaintiffs demand a trial by jury on all triable issues.

Dated: November 2, 2021  
Miami, Florida

Respectfully Submitted,

**SPECTOR RUBIN, P.A.**

By: /s/ Robert Borak
Robert M. Borak (FBN 015923)
Marc A. Rubin (FBN 62626)
Continental Plaza
3250 Mary Street, Suite 405
Miami, Florida 33133
Tel: (305) 537-2000
Fax: (305) 537-2001
Robert.Borak@spectorrubin.com
Marc.Rubin@spectorrubin.com