**UNITED STATES DISTRICT COURT FOR THE
SOUTHERN DISTRICT OF FLORIDA
CASE NO: 21-23861**

10 MINUTE FITNESS INC. d/b/a
ZAAZ

      Plaintiff,

v.

AMENTUM SERVICES, INC.,
f/k/a URS FEDERAL SERVICES, INC.,
and NAR ELECTRONICS HOLDING
GROUP, INC. f/k/a NAR ELECTRONICS
SOLUTIONS, LLC,

      Defendants,

AMENTUM SERVICES, INC.,
f/k/a URS FEDERAL SERVICES, INC.,

      Third-Party Plaintiff,

v.

NAR ELECTRONICS HOLDING
GROUP, INC. and NAR ELECTRONICS
SOLUTIONS, LLC,

      Third-Party Defendants,

_____/

## SECOND AMENDED COMPLAINT

**COMES NOW**, Plaintiff, 10 MINUTE FITNESS INC. d/b/a ZAAZ, by and through its

attorneys, Spector Rubin, P.A., and files its Second Amended Complaint against the Defendant,

AMENTUM SERVICES, INC., f/k/a URS FEDERAL SERVICES, INC., and against

Defendant/Third-Party Defendant, NAR ELECTRONICS HOLDING GROUP, INC. f/k/a NAR ELECTRONICS SOLUTIONS, LLC, and states as follows:

## JURISDICTION AND VENUE

1. At all material times, Plaintiff, 10 MINUTE FITNESS INC. d/b/a ZAAZ (hereinafter "ZAAZ") was and is a Texas corporation with its principal place of business in California.

2. Upon information and belief, Defendant AMENTUM SERVICES, INC., f/k/a URS FEDERAL SERVICES, INC. (hereinafter "URS") was and is a Delaware corporation with its principal place of business in Maryland.

3. Upon information and belief, Defendant NAR ELECTRONICS HOLDING GROUP, INC. f/k/a NAR ELECTRONICS SOLUTIONS, LLC, (hereinafter "NAR") was and is a Delaware corporation with its principal place of business in Miami, Florida.

4. This Court has jurisdiction based upon 28 U.S.C § 1332, as it is an action between citizens of different states and/or between citizens of a State and citizens of a foreign State and the amount in controversy exceeds $75,000.00 exclusive of interest and costs.

5. This Court has personal jurisdiction over URS, since URS engages in systematic and continuous business in this State, maintains a registered agent and offices in this State, a committed tortious acts within this State.

6. This Court has personal jurisdiction over NAR, since NAR engages in systematic and continuous business in this State, maintains its principal place of business in this State, and committed tortious acts within this State.

7. Venue is appropriate in this district as the acts or omissions complained of took place in this district.

8. All conditions precedent have been met or waived.

## STATEMENT OF FACTS

9.  Plaintiff ZAAZ is the industry leader in Whole Body Vibration technology.

10. ZAAZ machines are FDA listed as Class I Medical Device and Powered Exercisers.

11. ZAAZ primarily markets the machines by conducting limited-engagement events in the stores of major national retailers, such as Costco and Sam's Club.

12. ZAAZ sends its sales representative into the stores of its retail partners to demonstrate ZAAZ technology to their customers.

13. ZAAZ sells through their registers and its own ecommerce website.

14. ZAAZ does not distribute or sell wholesale to other resellers or sell on third-party websites.

15. ZAAZ features only one model of machine, the ZAAZ 20K WBV machine, which it has been selling since 2011.

16. Between April 2017 and June 2017 US Customs and Border Protection ("CBP") seized 3 containers (2 from Savannah, 1 from Miami), each containing 225 ZAAZ 20K machines, claiming counterfeit trademark due to an alleged improper depiction of a UL certification number stamped on the base of each machine.

17. These cases are referenced as 2017-1703-000157-01; 2017-1703-000158-01; and 2017-1703-000236-01.

18. The UL number was an accurate registration number of the safety certification of the plastic of the base case, but since ZAAZ machines themselves are CSA-certified instead of UL-certified, CBP claimed that the presence of the stamped UL # was misleading and inappropriate.

19. ZAAZ tried in vain to get CBP to agree to allow ZAAZ to correct the mistake (which had occurred at the factory level without ZAAZ's knowledge) by simply removing the stamp with solvent, painting over it, or even swapping all the base cases altogether.

20. However, CBP insisted that a "zero tolerance policy" would be enforced and that the 3 containers would all be forfeited.

21. Specifically, CBP advised ZAAZ that all of the machines in all 3 containers would be destroyed.

22. ZAAZ thereafter engaged in multiple discussions with CBP regarding the destruction.

23. On October 1, 2018, ZAAZ spoke with CBP, who advised that all of the machines had been sent to Miami and had been destroyed.

24. However, Plaintiff learned that, despite the multiple assurances from CBP that the machines had been destroyed, the "destroyed" machines were, in fact, being sold on EBAY and Amazon.

25. Curious as to how this could possibly have happened, ZAAZ attempted, several times, to contact CBP to inquire as to how the destroyed machines could have found their way onto ecommerce websites.

26. Upon information and belief, CBP designated to URS the responsibility to destroy the machines.

27. Specifically, URS was to destroy the machines in Miami, Florida.

28. Upon information and belief, URS provided CBP with the destruction certificates evidencing their destruction in Miami, Florida.

29. However, the machines were not destroyed since same were sold, and continue to be sold by third parties.

30. Each container contained 225 machines with a cost value of $91,181.25 each, and $273,543.75 in total.

31. Every one of the machines had been presold to ZAAZ customers at a price of $2,299.99, making the loss value $1,552,493.25.

32. However, the damage to ZAAZ caused by the acts or omissions of URS is much greater than the value of the subject machines.

33. The loss of the machines created a major disruption to the ZAAZ supply chain and order fulfillment process and schedule.  As a result, cash flow was severely impacted and ZAAZ was forced to take several emergency high-interest loans to compensate.

34. Further, the delivery timeframe communicated to customers at the time of purchase had to be extended, which impeded sales results.

35. The whole situation jeopardized the company as a whole.

36. Nevertheless, ZAAZ attempted to recoup its losses and recover its business.

37. However, ZAAZ discovered that its sales suffered – because it was competing against its own products which were now on the market due to the actions of URS.

38. That is, the machines, which CBP determined could not be sold in the United States and which URS attested under oath to CBP had been destroyed, were now being offered on EBAY and Amazon (and likely through other ecommerce sites and third-party retailers) at greatly reduced prices.

39. Again, ZAAZ does not sell to any resellers, only direct to consumers.

40. As such, there is simply no way that the machines could have gotten into the hands of these third parties.

41. Further, ZAAZ purchased one machine from eBay and one machine from Amazon and confirmed from the serial numbers and the presence of the offending UL stamps that the machines were indeed from the seized containers that were supposedly destroyed.

42. Obviously, the fact that the authentic ZAAZ 20K machines were now being offered through unauthorized, online resellers at 50%-60% below the ZAAZ MSRP had an enormous impact on ZAAZ's business.

43. Hundreds of sales were lost to customers.

44. These customers were introduced to ZAAZ through its marketing efforts in Costco or Sam's Club.

45. Due to the actions of URS, these customers then bought discounted machines online instead of from ZAAZ.

46. Hundreds more sales were lost to customers who had bought from ZAAZ and elected to return their machine in order to repurchase online at cheaper prices.

47. ZAAZ has always maintained its premium price and has long since established the ZAAZ 20K as the premiere WBV machine on the market.

48. The machines, which were supposed to have been destroyed, were now being offered online at discounted prices.

49. This caused tremendous damage to the reputation of the ZAAZ brand and the perception of its value.

50. ZAAZ lost customers and good will.

51. ZAAZ further experienced a wave of attrition as several very valuable sales representatives ceased working for ZAAZ as a result.

52. ZAAZ was also threatened with the loss of its contract with Costco, its most valuable retail partner, due to the strict rule that products cannot be marketed anywhere else at prices below what they are being sold for in Costco.

53. Several times Costco threatened to cancel its contract with ZAAZ unless the situation could be resolved.  ZAAZ spent considerable effort mending this relationship.

54. ZAAZ contacted the online retailers to alert them to the fact that the machines being sold on their sites by unauthorized third parties.

55. Despite these warnings, the sellers persisted in the online offerings.

56. The situation caused major losses of revenue and caused further cash flow shortfalls that ZAAZ had to make up for by taking crippling high-interest loans.

57. As a result of the actions of URS, ZAAZ was prevented from advancing on the completion and introduction of its next-generation WBV machine and the forward progress of the company.

58. It will take years to repair the ZAAZ reputation and financial stability.

## COUNT I – NEGLIGENCE (URS)

59. Plaintiff repeats and re-alleges the allegations contained in paragraphs 1 through 56 and further states:

60. URS owed a duty to Plaintiff, CBP and the general public, to destroy or otherwise dispose of the subject shipments in a timely and proper manner.

61. URS further owed a duty to Plaintiff, CBP and to the general public, to accurately advise as to the status of the destruction or other disposition of the subject shipments.

62. URS was negligent with respect to the disposition and destruction of the subject shipments after their seizure.

63. URS also failed to act reasonably and prudent under the circumstances with respect to the disposition and destruction of the subject shipments after their seizure.

64. Specifically, and without limitation, URS was either neglectful in its handling of the machines to allow same to be sold or given to third parties rather than destroying same, or otherwise permitted the sale or other disposition of the machines instead of destroying same.

65. Further, URS was neglectful in its duties to confirm the destruction of the machines in its care when it issued the destruction certificates, or permitted same to be issued despite knowing that the machines had not been destroyed.

66. URS's actions in the performance of its duties as a government contractor demonstrate a failure to exercise reasonable care that could reasonably be foreseen to create a substantial likelihood of harm to others, including plaintiff.

67. URS's conduct thus created a foreseeable zone of risk of injury and it was URS's duty to lessen that risk.

68. URS breached its duties to Plaintiff as set forth above.

69. As a proximate result of URS's conduct, Plaintiff was damaged as illustrated herein.

**COUNT II – NEGLIGENCE (NAR)**

70. Plaintiff repeats and re-alleges the allegations contained in paragraphs 1 through 56 and further states:

71. Based upon the allegations contained in the third-party complaint filed by Defendant URS against NAR, URS alleges that it delegated the duty to destroy the subject machines to NAR.

72. Plaintiff was at all times unaware of any contractual agreement between URS and NAR or any delegation of any duty by URS to NAR.

73. Plaintiff maintains that this duty was not delegable to NAR and that URS is responsible for any acts or omissions of NAR and/or its employees in executing their duties and/or contractual obligations.

74. However, if URS is ultimately deemed not responsible for the acts or omissions of NAR or its otherwise culpable in some degree, then NAR owed a duty to Plaintiff, CBP and the general public, to destroy or otherwise dispose of the subject shipments in a timely and proper manner.

75. NAR further owed a duty to Plaintiff, CBP and to the general public, to accurately advise as to the status of the destruction or other disposition of the subject shipments.

76. Based upon the allegations of the Third-Party complaint, NAR was negligent with respect to the disposition and destruction of the subject shipments after their seizure.

77. Based upon the allegations of the Third-Party complaint, NARt also failed to act reasonably and prudent under the circumstances with respect to the disposition and destruction of the subject shipments after their seizure.

78. Specifically, and without limitation, based upon the allegations of the Third-Party complaint, NAR was either neglectful in its handling of the machines to allow same to be sold or given to third parties rather than destroying same, or otherwise permitted the sale or other disposition of the machines instead of destroying same.

79. Further, based upon the allegations of the Third-Party complaint, NAR was neglectful in its duties to confirm the destruction of the machines in its care when it issued the

destruction certificates, or permitted same to be issued despite knowing that the machines had not been destroyed.

80. NAR's actions in the performance of its duties demonstrate a failure to exercise reasonable care that could reasonably be foreseen to create a substantial likelihood of harm to others, including plaintiff.

81. NAR's conduct thus created a foreseeable zone of risk of injury and it was NAR's duty to lessen that risk.

82. NAR breached its duties to Plaintiff as set forth above.

83. Based upon the allegations of the Third-Party complaint, as a proximate result of NAR's conduct, Plaintiff was damaged as illustrated herein.

**WHEREFORE,** for the reasons stated herein, plaintiff demands judgment in its favor and over and against Defendants, jointly and severally, in the amount of $12,326,036.50, together with prejudgment interest, costs, fees, and other and further relief as this Court deems just and proper.

## JURY DEMAND

Plaintiff demands a trial by jury on all triable issues.

Dated: Miami, Florida
May 10, 2022

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on May 10, 2022, a true and correct copy of the foregoing was filed with the Clerk of Court via the Court's CM/ECF system, which shall serve a copy of same upon all counsel of record.

Respectfully submitted,

SPECTOR RUBIN, P.A.
***Attorneys for Plaintiff***
3250 Mary Street
Suite 405
Miami, Florida 33133
Tel: 305.537.2000
Fax: 305.537.2001
Email: Robert.Borak@spectorrubin.com

By:   /s/ Robert Borak
      Robert M. Borak (FBN 015923)
      Marc A. Rubin (FBN 62626)